UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHAD DALCIN,

                Petitioner,                  **DECISION AND ORDER**
                                                                        No. 04-CV-6073(VEB)

       -vs-

THE STATE OF NEW YORK,

                Respondent.
_____

## INTRODUCTION

Petitioner, Shad Dalcin ("Dalcin"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Livingston County Court on charges of burglary and larceny. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction here at issue stems from an incident that occurred between 10:00 p.m. on December 13 and 4:00 a.m. on December 14, 2000, in which Dalcin allegedly entered the home of his former girlfriend, Amy Browne ("Browne"), and took fifty dollars from her purse and the keys to a car she had rented. Dalcin then allegedly stole the rental car. The indictment charged Dalcin with second degree burglary (N.Y. Penal Law § 140.25(2)); fourth degree grand larceny (N.Y. Penal Law § 155.30(8)), and petit larceny (N.Y. Penal Law § 155.25).

At trial, Connie Watkins ("Watkins"), Browne's mother, testified that she knew Dalcin as her daughter's ex-boyfriend and the father of their two children with Browne. Watkins had taken

her daughter to rent a car on December 13, 2000. T.223-24.[1] The following morning, at approximately 4:00 a.m., Watkins drove her car to her daughter's house so that Browne could drop off Watkins' son at work. T.225. When she arrived at the Browne residence, Watkins observed that the rental car was not in the driveway and that there was a bicycle off to the side of the driveway. *Id.* Watkins proceeded to wake up Browne and advise her that the rental car was missing. T.226.

Watkins then went to look for the police. T.227. Upon encountering a state trooper, Watkins advised him that someone had taken her daughter's rental car. T.228-29. Later, on her way to work, as she was driving down Oak Street, Watkins observed Dalcin standing by the rental car, which was parked by the side of the road. T.230-32. Dalcin was the only person in the area. T.230. Watkins exited her car and started swearing at Dalcin and asking him what he was doing. T.233-34. Dalcin asked Watkins if he was going to be arrested, to which she responded "probably." T.234. Watkins had Dalcin get into her car and they returned to Browne's residence. T.235. During this encounter, Watkins asked Dalcin where the keys to Browne's car were, to which Dalcin responded that the keys were in the car. *Id.*

Watkins testified that she had known the petitioner for thirteen years and had seen him in various states of intoxication. She stated that she did not believe that he was intoxicated at the time she observed him on December 14, 2000. T.236-38.

Avon Police Officer Michael Miller ("Miller") testified that he was working from 10:00 p.m. on December 13 to 6:00 a.m. on December 14, 2000. At approximately 4:00 a.m. on December 14, Miller was contacted by the state police and notified that they had been

---

[1] Citations to "T.__" refer to the trial transcript.

flagged down by a citizen (*i.e.*, Watkins) who had reported a stolen vehicle. T.260-61. Upon arriving at Browne's residence, Miller observed a bicycle lying in the snow just west of the house. T.261. Miller subsequently saw Dalcin exiting Watkins' car, at which time Miller asked him to have a seat in the back of his patrol car. T.263. When asked about Dalcin's physical condition, Miller testified that he observed vomit on Dalcin's pants and that, in his opinion, Dalcin was intoxicated. T.264-65.

     Browne testified that she had a relationship with Dalcin for ten years, between 1988 and 1998. Dalcin, who was the father of Browne's two children, also lived at her house between the summer of 1997 and December, 1998. T.271. Browne testified to a number of crimes committed by Dalcin against her: On September 19, 1996, Dalcin came home drunk and assaulted Browne. T.272-73. In July, 1998, Dalcin broke into Browne's home, a crime for which he was convicted. T.275. Browne also testified with respect to an incident on December 24, 1998, when the petitioner stole Watkins' car, another crime for which he was convicted. *Id.* On July 3, 1999, Dalcin again broke into Browne's residence. T.277-79. On January 12, 2000, Dalcin came to Browne's house wielding a knife. T.279.

     Browne testified that, while she and Dalcin were living together, he had a set of keys to both the front and back doors of the house. However, Dalcin later claimed that he had lost the key to the back door and because of this did not return it to her when she evicted him. T.284.

     Brown explained that on December 13, 2000, her car required warranty work and she rented a new Hyundai Elantra while her car was in for service. T.285. Browne drove the rental car to her home, parked it in the driveway and locked it. T.289. The keys to the car were placed in her purse and put on the counter. *Id.* Browne locked the doors to the house and went to bed

between 9:30 and 10:00 p.m. T.289-90. At 4:00 a.m., she was awakened by her mother, who asked her where the car was since it was not in the driveway. T.290. Browne stated that she observed that the car was missing. *Id.* She called the police and, while waiting for them to arrive, checked her purse. T.289-90. The car keys were missing from her purse, as was fifty dollars. T.291.

Brown testified that there were no signs of forced entry. *Id.* She related that she observed a bicycle in the driveway, which she identified as belonging to Dalcin. T.292. According to Browne, she had not given Dalcin permission to enter her home or to take the keys, money or car. T.293.

Browne then identified a letter which Dalcin had written to a woman named Virginia Legno ("Legno"), with whom Dalcin had resided following the termination of his relationship with Browne. T.294-97. The letter was written by Dalcin while in jail following his arrest on the instant charges. T.301. In the letter, Dalcin admitted to walking by Browne's residence on the night in question and stealing the car that was in the driveway and running it into a tree, believing that it was Legno's car. T.302. Browne identified a photograph of the car taken after it was recovered, which showed that it had sustained damage subsequent to the time she had left it in her driveway. T.306.

Avon Police Chief John Braisington ("Braisington") testified that he was on duty on December 14, 2000 and that he knew Dalcin. T.331. At approximately 9:14 a.m., Braisington had a conversation with Dalcin wherein he stated that he wanted to know what kind of deal there might be with regard to the incident involving the theft of Browne's rental car. T.332. According to Braisington, Dalcin's responses were logical and he appeared to be aware of his surroundings.

T.333-34.

Avon Police Officer John Carney ("Carney"), an evidence technician, testified that on December 14, 2000, he processed the rental vehicle that was recovered on Oak Street. T.336. Carney identified several pictures of the driver's side interior of the car, which showed that the dashboard and floor were covered with vomit. T.338-39. Carney also identified a picture of a car owned by Legno in December of 2000 and testified that her car and the car rented by Browne appeared to be similar. T.340-41.

Following the close of the prosecution's case, trial counsel called two witnesses in support of a defense of intoxication. The first was Legno, who testified that she observed Dalcin drinking in a bar on December 13, 2000, and that she told the bartender not to give him any more because he had had too much to drink. T.347-48. According to Legno, Dalcin was intoxicated when he left at 10:00 p.m. T.349, 365. The second defense witness was Heather Vonglis ("Vonglis"), who was a bartender at the bar where Dalcin was drinking on December 13, 2000. T.375-76. In Vonglis's opinion, Dalcin was intoxicated, so she cut him off and told him to leave the bar. T.378. Larry Dalcin, the petitioner's father, testified for the defense that he had never seen the bicycle that was found outside the Browne residence on December 14, 2000, at the petitioner's apartment. T.369-70.

The jury returned a verdict convicting Dalcin as charged in the indictment. T.478-79. On October 16, 2001, Dalcin was sentenced to concurrent terms of imprisonment, the longest of which was ten years on the burglary charge. Dalcin appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court, urging that reversal was warranted upon the following grounds: (1) the trial court committed reversible error in

permitting the prosecution to introduce evidence of the petitioner's prior crimes against Browne and her family; (2) the verdict sheet impermissibly contained references to penal law classifications; and (3) the sentence was unduly harsh and excessive. On December 30, 2002, the Fourth Department unanimously affirmed Dalcin's conviction. *People v. Dalcin*, 300 A.D.2d 1129 (App. Div. 4th Dept. 2002). The New York Court of Appeals denied leave to appeal. *People v. Dalcin*, 99 N.Y.2d 627 (N.Y. 2003). This habeas petition followed in which Dalcin raises the same grounds for relief that he raised on his state-court direct appeal. For the reasons set forth below, the petition is dismissed.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

### Analysis of Claims Raised in the Petition

**Claim One:   Erroneous admission of petitioner's prior crimes**

Dalcin claims that the trial court erred in allowing the prosecutor to present evidence of his prior crimes against the victim and her family. On direct appeal, the state court held that the evidence of these prior crimes was properly introduced as relevant to and probative of Dalcin's motive and intent. Furthermore, the state court held, its probative value outweighed its potential

for prejudice. Finally, the state court found, any prejudice to Dalcin was minimized by the trial court's limiting instructions both during the testimony of the victim's mother and during the trial court's charge to the jury. *See People v. Dalcin*, 300 A.D.2d at 1129 (citations omitted).

Generally, alleged evidentiary errors by a state trial court do not rise to the level of a federal constitutional violation. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (stating that a federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to re-examine state court determinations of state law); *see also Lipinski v. People of New York*, 557 F.2d 289, 292 (2d Cir. 1977) ("The states have traditionally been accorded great latitude in determining rules of evidence to govern proceedings in their own courts. In this sensitive area, characterized by delicate and interrelated judgments of fairness and efficiency, the federal courts have trod lightly to refrain from abrasive disruptions of state procedures and to avoid rigidity in an area of law that should be, above all others, empirical."). The Second Circuit has explained that "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998), *cert. denied*, 525 U.S. 840 (1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Under New York and federal law, a defendant's prior bad acts are admissible to show proof of motive, common scheme or plan, and intent. *Jones v. Stinson*, 229 F.3d 112, 120 (2d Cir. 2000) (citing *People v. Molineux*, 168 N.Y. 264, 293, 61 N.E. 286 (1901) (also codified as Fed. R. Evid. 404(b)); *accord, e.g., People v. Ventimiglia*, 52 N.Y.2d 350, 359, 438 N.Y.S.2d 261, 420 N.E.2d 59 (N.Y. 1981) (Prior uncharged crimes may be admitted to establish some

element of the crime under consideration and to show, among other things (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial). New York courts have held that evidence of prior or subsequent crimes committed by a defendant against the same victim is "highly probative of motive and/or intent" and generally admissible. *People v. Noriega*, 160 Misc.2d 632, 610 N.Y.S.2d 739 (N.Y. Sup. Ct. 1994) (collecting cases); *see also People v. Vega*, 3 A.D.3d 239, 771 N.Y.S.2d 30 (App. Div. 1st Dept. 2004) (citing *People v. Bierenbaum*, 301 A.D.2d 119, 748 N.Y.S.2d 563 (in murder case based wholly on circumstantial evidence, proof of the victim's husband's prior threats and violence toward her satisfied three of the classic five *Molineux* categories (intent, motive and identity) and was admissible for that purpose), *lv. denied*, 99 N.Y.2d 626, 760 N.Y.S.2d 107, 790 N.E.2d 281, *cert. denied*, 540 U.S. 821). Thus, I find that this evidence was properly admitted under New York law.

However, even assuming for the sake of argument that the trial court erred in admitting the prior crimes evidence, the error does not warrant habeas relief. The Second Circuit has explained that the "introduction of unfairly prejudicial evidence against a defendant in a criminal trial is contrary to both state law and federal law." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (internal citations omitted). Nevertheless, "not all erroneous admissions of such evidence are errors of constitutional dimension." *Id.* Rather, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" *Id.* (quoting *Dowling v. United States*, 493 U.S. at 352 (internal quotation marks omitted)).

Demonstrating that erroneous admission of other unfairly prejudicial evidence amounts to a denial of due process requires that the evidence, "viewed objectively in light of the entire record," must have been "'sufficiently material to provide the basis for conviction *or* to remove a reasonable doubt that would have existed on the record without it.'" *Id.* (quoting *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (emphasis supplied) (in turn quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985) (holding that erroneously introduced evidence must be "crucial, critical, highly significant") (quotation omitted)).

Dalcin is plainly unable to meet this standard because, quite simply, the proof against him was overwhelming: His bicycle was found at the scene of the crime, and Dalcin himself was discovered several blocks away from the victim's house, standing next to the stolen car. When asked by the victim's mother, he admitted to knowing where the keys to the stolen car were. Then, when the victim's mother approached him, Dalcin asked whether he was "going to be arrested." When Dalcin was apprehended by the police, he had vomit on his pants, as did the interior of the stolen car. Finally, Dalcin wrote a letter to his former girlfriend in which he confessed to the crime. Viewing the entire record before the jury, the Court cannot say that the evidence of Dalcin's prior crimes "remove[d] a reasonable doubt that would have existed on the record" had the prior crimes evidence not been introduced. *See Collins*, 755 F.2d at 19; *accord Dunnigan*, 117 F.3d at 125.

**Claim Two:   Erroneous jury sheet**

Dalcin claims that the trial court erred in submitting to the jury a verdict sheet which contained the New York Penal Law classifications of several of the crimes listed therein. On direct appeal, the state court disposed of the claim on the ground that it was unpreserved due to

trial counsel's failure to object. *People v. Dalcin*, 300 A.D.2d at 1129 ("By failing to object to the submission of the verdict sheet to the jury, defendant failed to preserve for our review his contention that the verdict sheet improperly contained the Penal Law classifications for counts one and three of the indictment[.]") (citing N.Y. Crim. Proc. Law § 470.05(2)). Respondent argues that the Appellate Division relied on an adequate and independent state ground–namely, New York's contemporaneous objection rule embodied in § 470.05(2)–thereby creating a procedural default that forecloses habeas review.

Where a state court rejects a petitioner's claim because the petitioner failed to comply with a state procedural rule, the procedural default can constitute an "adequate and independent" ground for the state court decision. *See*, *e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 729-30, 749-50 (1991). Such a default "will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted), which requires a petitioner to demonstrate "actual innocence," *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). *Accord Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002); *see also Harris*, 489 U.S. at 264 n.10 (stating that "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent state ground doctrine "curtails reconsideration of the federal issue on federal habeas"). That the Appellate Division ruled in the alternative on the merits of Dalcin's claim is of no moment. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has

also ruled in the alternative on the merits of the federal claim." *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996) (quoting *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) and citing *Harris*, 489 U.S. at 264 n. 10 ("[A] state court need not fear reaching the merits of a federal claim in an alternative holding."); *Wedra v. Lefevre*, 988 F.2d 334, 338-39 (2d Cir. 1993)).

Here, the Appellate Division's rejection of Dalcin's claim as unpreserved was made pursuant to New York Criminal Procedure Law ("C.P.L.") § 470.05(2), which precludes appellate review of any ruling made by the trial court unless a protest was made to the ruling "at any . . . time when the court had an opportunity of effectively changing the same." *Id.* To preserve a question of law for appellate review in New York, a party must make the trial court aware of its objection while there is time to cure the alleged error. *See, e.g.*, *People v. Martin*, 50 N.Y.2d 1029, 1031 (1980) (citing cases) (internal quotation marks omitted). The Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules." *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) (citing *Bossett v. Walker*, 41 F.3d 825, 829 n. 2 (2d Cir. 1994) (respecting state court's application of C.P.L. § 470.05(2) as adequate bar to federal habeas review); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991) (noting that failure to make objection at trial constitutes adequate procedural default under C.P.L. § 470.05(2)).

Even though the state court's reliance on C.P.L. § 470.05(2) was an "independent" state ground, there is a question in this Court's mind as to whether it was "adequate," under the circumstances of this case. *Compare People v. Daniels*, 244 A.D.2d 867, 665 N.Y.S.2d 131 (App. Div. 4th Dept. 1997) ("We reject the contention of defendant that Supreme Court erred in providing the jury with an annotated verdict sheet in the absence of defendant's express consent

thereto; by his silence, defendant impliedly consented to the submission of the annotated verdict sheet[.]") *with People v. Damiano*, 87 N.Y.2d 477, 481, 663 N.E.2d 607, 640 N.Y.S.2d 451 (N.Y. 1996) (rejecting prosecution's contention that "defendant's failure to register any objection to this verdict sheet renders his belated challenge not only unpreserved for appellate review, but actually constitutes implicit consent to the annotated verdict sheet"). The Second Circuit has explained that "novelty or sporadic application" can render a state procedural rule, such as C.P.L. § 470.05(2), "inadequate" to create a procedural default. *Garcia*, 188 F.3d at 79 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457-58 (1958) (deeming novel state procedural bar inadequate to thwart federal review of constitutional issue where criminal defendant could not fairly be deemed to have notice of procedural bar); *Williams v. Lane*, 826 F.2d 654, 659 (7th Cir. 1987) (collecting cases in which state procedural rules were deemed inadequate because of their novelty or sporadic application)).

     Based on the foregoing analysis, and in the interest of caution, because it is more efficient to dispose of Dalcin's claim on the merits than to determine whether there was a "fair and substantial basis" in state law for the finding of procedural default here, the Court will proceed to consider the substance of the claim regarding the jury sheets. As respondent correctly notes, the propriety of a state trial court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional question cognizable on habeas review. *E.g.*, *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Dalcin has cited no authority for the proposition that the Constitution prohibits giving the jury a written charge sheet. Moreover, the jury had already heard the allegedly offensive written information–the Penal Law's classification of the offenses–when the trial court read them the indictment and orally instructed them on the charges

against Dalcin. In any event, even if there was error on this issue, it was certainly harmless given the overwhelming evidence of Dalcin's guilt, as discussed above in this opinion. Habeas relief therefore will not issue on this claim.

**Claim Three:** **Harsh and excessive sentence**

Dalcin contends that his sentence as a second felony offender to ten-years imprisonment was unduly harsh and severe. A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. *See Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Here, Dalcin's sentence of ten years was well within the authorized statutory range. *See* N.Y. Penal Law §§ 60.05(3), 70.02(3)(a). Accordingly, this claim does not present a federal constitutional question cognizable on habeas review and must be dismissed.

## CONCLUSION

For the reasons stated above, Shad Dalcin's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Dalcin has failed to make a

substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

    **IT IS SO ORDERED**

                                                  /s/ *Victor E. Bianchini*

                                       _____
                                              VICTOR E. BIANCHINI
                                              United States Magistrate Judge

DATED:    July 13, 2006
                Rochester, New York.